# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUIS GARCIA, on behalf of himself and all other persons similarly situated known and unknown, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 07 C 4665<br>)<br>) Judge Joan H. Lefkow |
| THE SALAMANCA GROUP, LTD., FLASH EXPRESS WESTSIDE, INC., and ULYSSES SALAMANCA, individually, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Luis Garcia, on behalf of himself and all other persons similarly situated, has brought a suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against defendants for failure to pay overtime wages for all time worked in excess of forty hours in any individual work week. Garcia also brings individual claims under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. §115/1 *et seq.*, for unauthorized deductions from his wages and for defendants' failure to compensate him for all time worked, as well as a claim under 29 U.S.C. §215 for retaliatory discharge.

Before the court is plaintiff's motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. §216(b). Specifically, plaintiff seeks an order (1) allowing the plaintiff's proposed opt-in notice to be issued to similarly situated persons, (2) approving the form of the proposed Notice and Consent forms, (3) approving the issuance of the Notice and

Consent forms, and (4) requiring defendants to submit to plaintiff, within seven days of this order, a complete list of the names and addresses of all current and former employees employed by defendants within the last three years. For the following reasons, plaintiff's motion [#18] will be granted.

**BACKGROUND**

Defendants, The Salamanca Group, Ltd., Flash Express Westside, Inc., and Ulysses Salamanca, individually (collectively, "defendants"), operate four restaurants and a catering business in Chicago: Flash Taco, Flash Express Westside, Underdogg, Café Con Leche, and Andrea's Catering. According to Garcia's affidavit, which he submitted along with his motion, all five of these businesses are operated by Ulysses Salamanca or Liliana Salamanca. Ulysses Salamanca ("Salamanca") is responsible for hiring, firing, and disciplining employees, directing the work of employees, setting employee schedules, and performing the payroll functions for each of the restaurants. Garcia further states that the various restaurants operated by the defendants share supplies and inventory among locations and that the restaurants also share employees. For example, Garcia states that he has worked at all of the restaurants, as have other employees.

According to his affidavit, Garcia worked at the defendants' restaurants between about September 2001 and December 2002, and between about April 2003 and October 5, 2007. Prior to about January 2005, Garcia held the titles of "cook" and "food preparer." Garcia Aff. ¶ 10. In or around late January 2005, he was given the title of "Manager #2 Day Shift." *Id.* Despite these changes in job title, Garcia maintains that there were no material differences in job duties and that throughout his employment at defendants' restaurants, he never had the authority to hire

or fire employees, discipline employees, interview new hires, set pay rates, or otherwise participate in decisions regarding employee compensation. Rather, Garcia states, he always performed the same job duties: he cooked, prepared food, performed general cleaning duties, and on occasion performed cashier duties.

According to Garcia's affidavit, while working at the defendants' restaurants, he and his fellow employees were subjected to the same common pay practices: defendants paid employees a set amount of wages for working a fixed number of hours per week. For example, Garcia states that between April 2003 and July 2004, he was paid $350 per week to perform sixty hours of work per week and that other employees were similarly paid a set amount for working a fixed number of hours. Garcia also claims that defendants required plaintiff and all the other employees to punch in fifteen minutes prior to their scheduled start time but that defendants did not pay them for the period between the time they punched in and their scheduled start time.

According to his affidavit, Garcia often worked six shifts per week and nine to ten hours per shift, routinely working in excess of forty hours per week, but was never paid overtime wages (i.e., at a rate of one and a half times his regular rate of pay) for time he worked in excess of forty hours per week. Garcia claims that defendants' other employees also worked in excess of forty hours per week and, likewise, were not paid overtime wages.

## LEGAL STANDARD

The FLSA expressly provides that an employee may bring a collective action on "behalf of himself . . . and other employees similarly situated" to recover unpaid overtime compensation. 29 U.S.C. § 216(b); *see also Riddle* v. *National Sec. Agency, Inc.*, No. 05 C 5880, 2007 WL 2746597, at *5 (N.D. Ill. Sept. 13, 2007). A prospective member of the collective action may
3

"opt-in" by filing a written consent form in the court where the action is brought; a person who does not opt-in is not part of the FLSA collective action and is not bound by the court's decision. *Gambo* v. *Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

Although a plaintiff in an FLSA collective action is not required to seek leave of the court prior to issuing notice of the lawsuit to prospective members, *Heitmann* v. *City of Chicago*, No. 04 C 3304, 2004 WL 1718420, at *2 (N.D. Ill. July 30, 2004), district courts in this district have regularly exercised discretionary authority over the notice process. *Gambo*, 2005 WL 3542485, at *3. The Seventh Circuit has determined that a district court may not prohibit a plaintiff from sending notice altogether. *Id.* (citing *Woods* v. *New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982)). Beyond that limitation, the Court of Appeals has not provided guidance on how a district court should exercise its discretion in the notice process under 29 U.S.C. § 216(b). *Id.*

A number of courts in this district have used a two-step method to determine whether a plaintiff is "similarly situated." *See, e.g.*, *id.*; *Persin* v. *CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *2 (N.D. Ill. Nov. 23, 2005). At the first step, "[a] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores* v. *Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citing *Taillon* v. *Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003)) (internal quotation marks omitted). "Once such a 'modest factual showing' has been made, a court may, in its discretion, order that notice be provided to putative

collective action plaintiffs. The second step consists of the court determining whether the class should be restricted based on the 'similarly situated' requirement after discovery is complete." *Id.* (citing *Belbis* v. *County of Cook*, No. 01 C 6119, 2002 WL 31600048, at *4 (N.D. Ill. Nov. 18, 2002)) (internal quotation marks omitted).

## ANALYSIS

### I. Authorization of Notice

At this early stage in the litigation, plaintiff's motion requires analysis only under the first step of the two-step method. As one court explained, the "modest factual showing" requirement of the first step "is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo*, 2005 WL 3542485, at *4 (citing *Garza* v. *Chicago Trans. Auth.*, No. 00 C 0438, 2001 WL 503036, at *2 (N.D. Ill. May 8, 2001)); *accord Gonzalez* v. *Tenacious Cleaning*, No. 05 C 5217, at *3 (N.D. Ill. June 1, 2006).

Defendants argue that plaintiff has failed to make the required modest factual showing. In his affidavit, Garcia states that, like him, "[o]ther employees worked more than forty hours per week" and "were not paid overtime wages." Garcia Aff. ¶ 22. Garcia also names at least seventeen particular co-workers whom he heard "complain about the Company's failure to pay them for all the time they worked, including the overtime hours they worked." *Id.* The court finds, therefore, that plaintiff has made a modest factual showing that the current and former employees to which plaintiff seeks to send notice were victims of a common policy or plan under which defendants failed to pay them overtime wages.

Defendants also argue that plaintiff has failed to demonstrate that other employees desire to opt-in to this case. Defendants cite both the fact that plaintiff submitted only one affidavit in support of his motion (that of Garcia, the named plaintiff) and the affidavits (submitted by defendants along with their response brief) of two current employees who state that Garcia has aggressively but unsuccessfully solicited defendants' other employees to join the lawsuit. The gravamen of the defendants' argument is that "despite Plaintiff's averments that dozens of employees prolifically complained about Defendants' alleged failure to pay overtime, plaintiff does not suggest that he even knows anyone who might like to join." Defs.' Resp. at 5.

Defendants cite a number of decisions, such as *Dybach* v. *Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991), in which courts have required that, before a case can proceed as an FLSA collective action, a plaintiff must come forward with evidence that there are other employees who desire to opt-in. The majority of the such decisions cited by defendants are from courts in the Fifth and Eleventh Circuits. *See, e.g.*, *id.*; *Barten* v. *KTK & Assocs., Inc.*, 2007 U.S. Dist. LEXIS 54068, at *7 (M.D. Fla. July 24, 2007).

As plaintiff notes, however, a number of courts have held that such a requirement is in conflict with the "Supreme Court's position that the Act should be liberally 'applied to the furthest reaches consistent with congressional direction.'" *See, e.g.*, *Reab* v. *Elect. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002). A court in this district recently rejected a rule almost identical to that proposed by the defendants, explaining:

> Defendants' argument that [plaintiff] must produce evidence that other employees wish to join the class before the class notice may be sent puts the cart before the horse. Though a limited number of courts appear to have adopted this procedure . . . there is no controlling precedent in this circuit. Defendants' proposed rule does not make sense. It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's

6

> ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs. That aside, the logic behind defendants' proposed procedure—requiring [plaintiff] to show that others want to join in order to send them notice asking if they want to join—escapes the Court. Requiring a plaintiff to make an advance showing that others want to join would undermine the "broad remedial goal" of the FLSA.

*Heckler* v. *DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (quoting *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)) (additional citations omitted). For the reasons of practicality cited by plaintiff and other courts, and because the FLSA is "remedial and humanitarian in purpose," *see Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944), this court must likewise reject the rule proposed by defendants that would require a plaintiff to come forward with evidence that there are other employees who desire to opt-in.

Defendants further argue that plaintiff has presented no evidence that he is similarly situated to the putative members of the collection action. The court notes, however, that at this first step of the two-step process, the plaintiff's burden is light: "a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo*, 2005 WL 3542485, at *4. As detailed above, plaintiff has set forth the requisite "modest factual showing" that he and other similarly situated employees were subjected to a common policy and plan according to which defendants violated the FLSA.

## II. Defendants' Objections to the Content of the Notice and Consent Forms

Defendants also raise five objections to the content of the plaintiff's proposed Notice and Consent forms. First, the defendants object that the Notice improperly indicates that the class period begins August 17, 2004, or three years prior to the date the complaint was filed, even

7

though the statute of limitations for each putative collective action member continues to run until he or she files a written consent form. Because plaintiff has agreed to revise the proposed Notice of Lawsuit to indicate that individuals are permitted to join the lawsuit if they worked for defendants "within the last three years," the court considers defendants' first objection moot.

Second, defendants object that the Notice describes the putative class as "all *persons* who worked at the [defendants' restaurants]," even though the FLSA grants protections not to all persons, but only to employees. Because plaintiff has agreed to change the language to "all *employees* who worked at the [defendants' restaurants]," the court considers defendants' second objection moot.

Third, defendants object that the "RE:" line in the Notice inaccurately describes this action as "A Lawsuit for *Owed* Overtime Wages," even though the court, to date, has not made any determination that any wages are "owed." Because plaintiff has agreed to change the language in the "RE:" line to "A Lawsuit to Recover Overtime Wages," the court considers defendants' third objection moot.

Fourth, defendants suggest that, given the relatively small number of putative class members, a 30-day opt-in period would be sufficient, as opposed to the 45-day period proposed by plaintiff. The court finds that a 45-day opt-in period is reasonable and appropriate and overrules defendants' fourth objection.

Fifth, defendants argue that the opt-in form should require the employee to state his or her dates of employment so that this court can verify that they were in fact employed during the statutory period. Because the form initially proposed by plaintiff already requires the employee to represent that he or she has "worked [for the company] during the last three years" and "that

8

there were weeks in which I worked over forty (40) hours when I did not receive overtime pay," the court finds the defendants' proposed addition to be unnecessary. Defendant's fifth objection is therefore overruled.

III. Methods of Notice

Plaintiff proposes that the court authorize notice by three separate methods: (1) by first class U.S. Mail, (2) in employee pay envelopes, and (3) by posting one copy at each of the defendants' four restaurants. Although the defendants have not objected to any of the methods of notice proposed by plaintiff, the court briefly considers each. First, notice by first class U.S. Mail is the traditional method of providing notice, *see, e.g.*, *Reab* v. *Electronic Arts., Inc.*, 214 F.R.D. 623, 630 (N.D. Colo. 2002), and the court approves of notice delivery by that means. Second, the court finds that requiring the defendants to include the notice in employees' pay envelopes along with their paychecks would be unnecessarily intrusive, *see King* v. *ITT Continental Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *4 (N.D. Ill. Feb. 18, 1986), and the court denies plaintiff's request to authorize notice by that means. Third, the court finds that requiring the notice to be posted at each of defendants' four restaurant locations would be appropriate and not unduly punitive, *see Romero* v. *Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006), and therefore authorizes notice by that means.

**CONCLUSION AND ORDER**

For the reasons discussed above, plaintiff's motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) [#18] is granted. The court hereby

9

enters an order (1) allowing the plaintiff's proposed opt-in notice to be issued to similarly situated persons by first class U.S. Mail and by posting one copy at each of the defendants' four restaurants (but not in employees' pay envelopes); (2) approving the form of the proposed Notice and Consent forms, subject to the modifications agreed to by plaintiff in his reply brief; (3) approving the issuance of the Notice and Consent forms, subject to the modifications agreed to by plaintiff in his reply brief; and (4) requiring defendants to submit to plaintiff, within seven days of this order, a complete list of the names and addresses of all current employees and former employees employed by defendants within the last three years.

Dated: March 24, 2008            Enter:_____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge